```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION
```

**Reginald T. Hardaway, Sr.**          )
                                        )
       Plaintiff,                )
                                        )
  v.                            )   No. 10 C 1918
                                        )
**CIT Group/Consumer Finance Inc.,**    )
**Kimberly J. Weissman,**              )
                                        )
       Defendants.               )
                                        )

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a *pro se* complaint against CIT Group/Consumer Finance Inc. ("CIT"),[1] the entity he claims serviced a loan secured by his home, and Kimberly Weissman, an attorney who represented that entity in connection with the foreclosure of plaintiff's home. Plaintiff asserts numerous violations of constitutional, statutory, and state law arising out of the foreclosure action. Defendant CIT has moved to dismiss all claims against it pursuant to Fed. R. Civ. P 12(b)(6). The motion is granted because, as discussed below, even under the liberal pleading standard applicable to *pro se* plaintiffs, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the factual material plaintiff alleges to support his claims does not, at least as to this defendant, "raise a right to relief above the

---

[1] Vericrest Financial, Inc., claims to be the successor in interest to CIT. Plaintiff does not appear to dispute that Vericrest is now the party in interest, but for consistency, I refer to the institutional defendant as "CIT."

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[2]

I.

The story that emerges from plaintiff's complaint and supporting affidavit (though these documents conflict with one another in certain details) is that on September 14, 2006, plaintiff and his wife (who is not named as a plaintiff in this suit, but who I presume plaintiff means to include in his references to "plaintiffs" or "plaintiff(s)") refinanced their home in an agreement with Accredited Home Lender, Inc. Their mortgage contained an interest rate of 8.99 percent for thirty-five months beginning November 1, 2006, and a balloon payment of $350,351.08. Plaintiff states that he and his wife were unaware that "the Broker was initiating this type of loan, which violated the Good Faith Estimate, per Housing and Urban Development."

Plaintiff alleges that he "entered hardship on or after February, 2008."[3] In a letter dated July 10, 2008, and addressed to plaintiff's wife (which plaintiff attaches to his complaint and

---

[2] The pleading defects noted herein may warrant dismissal of most claims as to both defendants. But plaintiff has arguably stated one or more claims against defendant Weissman, who, although apparently served in this case, has neither appeared nor responded to the complaint in any fashion. I decline to dismiss the claims against her *sua sponte,* and instead issue a judgment of default, as her time to answer or otherwise plead has expired.
[3] Plaintiff alleges that he had been laid off from his employment with Chicago Public Schools in June of 2004, and was working (presumably at the time he signed the 2006 loan, although the sequence of events is unclear) in two part-time positions as an adjunct professor at Concordia University and Olivet Nazarene University. At some point, plaintiff was laid off from the latter of these positions.

states that he received), defendant Weissman stated that her law firm had been retained by CIT to collect the entire balance due on the plaintiff's mortgage. The letter explained, among other things, that under federal law, plaintiff had a right to dispute the validity of the claimed debt. The letter further explained, "[i]f you do dispute it, by notifying the undersigned in writing to that effect, I will, as required by law, obtain and mail to you proof of the debt." Complaint, p. 52. Plaintiff acknowledges in his complaint that he did not exercise his right to dispute the debt, claiming he did not know how to do so.[4]

Weissman's July 10, 2008, letter also stated that to avoid litigation, plaintiff could, within ten days of the date of the letter, either pay an identified portion of the balance, or contact Weissman at the number provided on her letterhead "in order to work out arrangements for payment." Plaintiff does not claim to have contacted, or attempted to contact, Weissman at any time thereafter, but he states that he "made contact with the defendant CIT on July 16, 2008," and that he was "informed to fax income information" and a "letter of hardship." Plaintiff does not state whether he faxed the information requested. He alleges, however, that "for months, the plaintiff(s) were unsuccessful in making

---

[4]This is how I read plaintiff's allegation, which states: "Due to the plaintiff(s) knowledge on how to dispute this debt, they proceeded without doing so."

contact with the defendant [by telephone],"⁵ and that they "left unreturned m[e]ssages with the defendant." Complt., at 4.

On September 30, 2008, CIT initiated foreclosure proceedings against plaintiff. Plaintiff states that he "suffered serious emotional distress from his interactions with CIT, and that it was reasonably foreseeable that such distress would have resulted from the company's conduct." In particular, plaintiff alleges that in October of 2008, he was "suddenly stricken with a severe voice problem" which negatively affected his employment, causing a further loss of income.

On February 10, 2009, defendants filed a motion for a judgment of foreclosure. Plaintiff alleges that in or around June of 2009, he was "informed that CIT wasn't able to modify [his] mortgage and that [CIT] 'didn't participate in the bailout funds from the Obama Administration and wasn't under any kind of direct order form the government to help the plaintiff.'" Cmplt., at 4. Plaintiff twice states that CIT's proffered reason for declining to modify his loan was a "shortage in income." *Id.*, at 4 ("CIT after reviewing the plaintiff(s) income stated that they didn't qualify for any workout due to shortage in income"), 38 ("After being told of a shortage in income, we added our son's income to the formula. [CIT] repeated to state that we did not have enough income.").

---

⁵The quoted text, excluding the bracketed portion, is from p. 4 of the complaint. At page 38, plaintiff specifies that he and his wife "were unable to contact [CIT] *by telephone*." (Emphasis added)

A judicial sale of plaintiff's property was held, following a public notice of sale, on June 3, 2009. Then, "[l]ater in 2009, around October, the Weismann (sic) Law Firm left foreclosure papers ON OUR DOOR STAIRS. The papers, apparently, were delivered late at night and were left on the stairs where they could have gotten wet or blown away. Thereafter, we attended court where Judge Jesse Reyes ruled for the foreclosure and for us to vacate the properties by October 13, 2009." Cmplt., at 38.[6]

## II.

While plaintiff's complaint is replete with references to various sources of law, it is strikingly short on facts to substantiate a claim under any of them. The complaint opens with a reference to the Fourteenth Amendment, then states that the suit is "brought pursuant to the Fair Housing Act of 1968." The next paragraph, set off with the caption, "Discrimination under Fair Housing Act," makes passing reference to that statute, then to the Illinois Human Rights Act, and then to the National Housing Act, before stating that the case "arises" under the Fair Debt Collection Practices Act ("FDCPA"). This paragraph contains no factual allegations, but instead offers plaintiff's interpretation of obligations imposed by the various statutes he names.

---

[6] Plaintiff includes additional allegations relating to subsequent proceedings in the foreclosure action, including an emergency motion by plaintiff and plaintiff's appeal of the court's October 13, 2009, decision. The substance and resolution of these proceedings are unclear from the complaint, but they do not, in any event, appear relevant to plaintiff's claims.

The next two paragraphs are difficult to parse. They identify "Deceptive Business Practice[s]" (presumably the Illinois Consumer Fraud and Deceptive Business Practices Act), and the Truth In Lending Act, state that CIT "refused to engage in loss mitigation" in violation of "Section 230(a) of Title II of the National Housing Act," then conclude that CIT "acted with prejudice in conducting business with the plaintiffs in a deceptive manner upon collecting a debt."

The complaint proceeds to identify four discrete counts, which are captioned, in order, "Truth [in] Lending Violations," "Discrimination Under Fair Housing Act," "Breach of Good Faith and Fair Dealing," and "Illegal Foreclosure Under Uniform Commercial Code." Each of these counts is peppered with references to various statutes, including, in addition to those mentioned above, the High Risk Home Loan Act, and the "Anti-Predatory Act." The factual material summarized above is spread across these four counts.

The penultimate section of the complaint, titled "Violations," contains a list of constitutional and statutory authority, including: 1) the Truth in Lending Act, 2) the Home Ownership and Equity Protection Act ("HOEPA"), 3) the Illinois Consumer Fraud and Deceptive Business Practice Act, 4) the Fair Debt Collection Practices Act, 5) the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1602, 6) the Fourteenth Amendment, 7) the Illinois Human Rights Act ("IHRA"), 8) the Fair Housing Act ("FHA") and the National Housing Act, 9) the Real Estate Settlement Procedures Act,

and 11) the UCC. Although not included in this list, plaintiff also alleges a common law claim for intentional infliction of emotional distress.

III.

I am mindful that plaintiff is not an attorney (although I appointed one who has represented him in his response to the pending motion), and that his complaint is to be liberally construed. I am also sympathetic to the hardship and frustration plaintiff has suffered as a result of CIT's decision not to modify the terms of his loan, and the loss of his home. Nevertheless, his complaint cannot reasonably be construed to support any of the claims he asserts against CIT.

1. FHA and IHRA claims

I begin with plaintiff's discrimination claims under the FHA and the IHRA.[7] While it is true that plaintiff need not allege "specific facts establishing a prima facie case of discrimination," *Swierkiewsicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); *Boykin v. KeyCorp*, 521 F.3d 202 (2nd Cir. 2008), he must, even under the liberal standards of Rule 8, "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, which is to say, he must "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). But in his complaint, plaintiff

---

[7]Plaintiff apparently concedes that his NHA claim should be dismissed, since he does not respond to defendants' argument on this issue.

offers nothing but sheer speculation to support the conclusion that discriminatory animus motivated CIT's decision not to modify his mortgage. Even if I assume that plaintiff's race could be inferred from his complaint (he does not allege it, but he suggests in his response that it can be inferred from the demographics of his neighborhood--a questionable basis for such an inference), plaintiff's affidavit reveals that CIT's stated reason for declining to modify the mortgage was that plaintiff had insufficient income. There is nothing in plaintiff's complaint to suggest that this reason was pretextual. Moreover, plaintiff does not allege that he was qualified for the loan modification he sought, or that he received less favorable treatment than other loan modification applicants because of his race. These shortcomings distinguish plaintiff's complaint from the ones at issue in *Boykin* and *Swanson*, and they are fatal to his statutory discrimination claims.

2. <u>Fourteenth Amendment claim</u>

As for plaintiff's Fourteenth Amendment claim, such a claim requires state action, and the only basis plaintiff asserts is that CIT allegedly received federal funds through the Troubled Assets Relief Program. Even assuming that allegation is true, "[t]he receipt of federal funds alone is not sufficient to establish state action." *Turner v. Jackson Park Hospital*, 264 Fed. App'x 527, 530 (7th Cir. 2008); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 840

(1982); *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982). Accordingly, this claim also falters at the starting gate.

3. <u>FDCPA claim</u>

Plaintiff's claim under the FDCPA fails because the complaint and its attachments (and also the public record, as noted below) reveal that CIT owned the debt it attempted to collect through a third-party debt collector, defendant Weissman. Neither creditors who collect their own debts, nor creditors who retain non-affiliated debt collectors, are subject to the FDCPA. *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 978 (7th Cir. 1998)("[c]reditors who collect in their own name and whose principal business is not debt collection...are not subject to the [FDCPA]"); *Harrison v. NBD Inc.*, 968 F. Supp. 837, 843 (E.D.N.Y. 1997)("[c]learly, a creditor which retains a non-affiliated debt collector would not be subject to the FDCPA.") Plaintiff argues that "the principle (sic) business of CIT is not known to the plaintiff," and that he is entitled to discovery "to determine the relationship between CIT and the debt collection practices that were employed," but nothing in his complaint suggests that such discovery would be anything more than a fishing expedition--and a fruitless one at that.

Moreover, CIT's argument that the statute of limitations bars plaintiff's FCDPA claim against it appears to have merit. The FDCPA requires that claims be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. The

complaint alleges that plaintiff received Weissman's collection letter on July 10, 2008, and that the action to foreclose on his property was filed on September 30, 2008. Plaintiff did not file his complaint until March of 2010. While it is true that the statute of limitations is an affirmative defense, and should not generally be invoked as a ground for dismissal, in this case plaintiff concedes that his complaint was filed after the one-year deadline, and argues only that his claim viable based on a theory of continuing violation. But this theory lacks support in the law. "Where an FDCPA violation arises out of a collection lawsuit...the circuit courts that have ruled on the issue agree that the clock starts when the allegedly wrongful litigation begins." *Judy v. Blatt, Hasenmiller, Leibsker and Moore*, LLC, No. 09 C 1226, 2010 WL 431484, at *3 (N.D. Ill. Jan. 29, 2010) (Gottschall, J.) Because plaintiff concedes that litigation began more than one year before he brought his claim, dismissal of this claim against CIT is proper.

4. TILA and HOEPA claims

Turning now to plaintiff's TILA and HOEPA claims, plaintiff argues that defendants' disclosure of the interest rate applicable to his loan was "confusing and misleading" because his Adjustable Rate Note and two different TILA Disclosure Statements (all of which documents are attached to plaintiff's complaint) identified three different interest rates. This argument is meritless. To begin with, one of the TILA Disclosure Statements (at p. 33 of the

complaint) is dated July 1, 2004--two years before the loan at issue here--and, on its face, relates to a loan and a lender not involved in this suit. The second TILA Disclosure Statement (at p. 32 of the complaint) lists the Annual Percentage Rate--clearly identified as "The cost of your credit as a yearly rate"--as 10.793 percent. And the Note (beginning at p. 25 of the complaint) identifies plaintiff's yearly interest rate as 8.999 percent.

While it is true that the APR identified in the TILA Disclosure Statement is different from the initial interest rate identified in plaintiff's Adjustable Rate Note, any perceived inconsistency in these figures "arises...from the lender's compliance with the truth-in-lending requirements" and thus does not support a TILA violation. *See Smith v. Anderson*, 801 F.2d 661, 663 (4th Cir. 1986) (dismissing TILA claim based on different interest rates on the note and in the truth-in-lending statement, explaining that "APR" is "defined by federal regulations" and "differs from the general definition of interest rate because it considers, by definition, a broader range of finance charges when determining the total cost of credit as a yearly rate.").

Moreover, it is not until plaintiff's opposition that he claims to have been confused or misled by the interest rates identified in the referenced documents. As plaintiff acknowledges, the complaint does not allege that plaintiff was charged interest at rates that were not clearly disclosed to him, nor does it allege that plaintiff made, or was expected to make, payments in amounts

other than those he anticipated. While the complaint does assert that plaintiff was unaware of the "type of loan" an (unidentified) broker initiated, this vague allegation cannot reasonably be construed to state a claim under TILA or HOEPA, especially in light of the clear and conspicuous terms of the Note and the TILA Disclosure Statement plaintiff signed.

5. RESPA claim

Plaintiff's claim under RESPA is grounded in his allegation that the broker involved in his loan received an unlawful "kickback." CIT contends that this claim is barred by the statute's one-year limitations period. Plaintiff acknowledges that his claim was filed outside the limitations period but argues that the doctrines of equitable tolling and fraudulent concealment apply. To support the application of equitable tolling, a plaintiff must show "that he could not by the exercise of reasonable diligence have discovered essential information bearing on his claim.") *Thomas v. Ocwen Fed. Bank FSB*, No. 01 C 4249, 2002 WL 99737, at *3-4 (N.D. Ill. Jan. 25, 2002) (Kocoras, J.) (dismissing RESPA claims barred by statute of limitations). Here, however, plaintiff bases his claims on documents that have been in his possession since he closed on his mortgage loan in September of 2006. Plaintiff does not allege when he discovered the allegedly unlawful "kickback," or any facts to support either the inference that a belated discovery of the "kickback" prevented him from timely filing his claim, or the inference that he exercised

reasonable diligence to discover the wrongful nature of the fees he challenges. *See id*. In the absence of such allegations, his assertion of equitable estoppel rings hollow.

Plaintiff's claim that fraudulent concealment precludes the application of the statute of limitations applies is similarly without substance. As discussed below, plaintiff has not alleged any fraudulent conduct by CIT. Moreover, "[f]raudulent concealment 'denotes efforts by the defendant-above and beyond the wrongdoing upon which the plaintiff's claim is founded-to prevent the plaintiff from suing in time.'" Id., at *3 (citing *Cada v. Baxter Healthcare Corp*., 920 F.2d 446, 452 (7th Cir. 1990)). Because plaintiff has made no such allegations, his claim that the fraudulent concealment doctrine applies is meritless. Plaintiff's RESPA claim is untimely.

6. <u>High Risk Home Loan Act claim</u>

As for plaintiff's claim under the High Risk Home Loan Act, CIT argues that this claim fails because plaintiff does not allege any facts to suggest that his loan is covered by that statute. Plaintiff does not respond to this argument, and in fact raises no argument to support this claim other than the one advanced in support of his TILA and HOEPA claims, namely, that CIT failed to disclose the full terms of his loan. Even if this argument were not controverted by the complaint itself, as discussed above, it fails to rebut CIT's argument that the High Risk Home Loan Act does not apply to plaintiff's loan.

7. ICFA claim

Plaintiff's consumer fraud claim under the ICFA fails on several fronts. Plaintiff must establish five elements under the ICFA: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception. *Dubey v. Public Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009). Moreover, "[c]laims for violation of the Consumer Fraud Act are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure." *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

Even construing plaintiff's *pro se* complaint liberally, I conclude that it has not met Rule 9(b)'s particularity requirement. Indeed, even plaintiff's counseled response offers nothing more substantial than the vacuous assertion that the claim "involved unfairness and deception in relation to the plaintiff's mortgage." Neither the complaint, nor the opposition brief, identifies any deception by CIT (the only "deception" identified in the complaint is attributed to an unidentified "broker," but even this alleged deception seems to be belied by plaintiff's signature on the various loan and disclosure documents which, on their faces,

clearly identify the terms of the loan), much less does it plead facts to suggest that CIT intended plaintiff to rely on any deception. These flaws are fatal to plaintiff's claim under the ICFA.

8. <u>Illinois Mortgage Foreclosure Law claim</u>

Plaintiff argues that under the Illinois Mortgage Foreclosure Law, he was entitled to reinstate his mortgage by making all payments and costs within ninety days of summons, and that he attempted to make arrangements to do so, but his attempts "went unanswered" by CIT, such that he was "not allow[ed]" to cure the default. Pl.'s Resp., at 15. But this is a far cry from what the complaint actually alleges. The complaint does not state, or even suggest, that plaintiff was prepared to cure the default on his mortgage by paying the entire balance due, plus costs. Instead, it alleges that plaintiff attempted to contact CIT to "modify" his mortgage but was unsuccessful. Plaintiff plainly has not stated a claim under 735 ILCS 5/15-1602.

9. <u>Good Faith and Fair Dealing, UCC, and IIED claims</u>

This leaves plaintiff's claims for breach of the duty of good faith and fair dealing; violation of the UCC; and intentional infliction of emotional distress. Under Illinois law, contract law recognizes an implied duty of good faith and fair dealing, but the breach of this duty is not recognized as a claim independent of a breach of contract claim. *LaSalle Nat'l Bank v. Metropolitan Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994). Because plaintiff's

complaint cannot reasonably be construed to allege a breach of contract, this claim fails.

Plaintiff's claim under the UCC demands proof that CIT has, and is entitled to enforce, its rights pursuant to plaintiff's loan agreement. It is not at all clear that the UCC entitles plaintiff to the relief he requests. In any event, however, CIT argues that documents available to the public via the Cook County Recorder of Deeds website (of which I may take judicial notice without converting the motion to one for summary judgment, *see Kaye v. D'Amato*, 357 Fed. App'x 706, 713 (7th Cir. 2009) (citing *Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008)) establish its right to enforce plaintiff's mortgage obligations. Plaintiff does not respond to this argument, but instead asserts, without further argument, that the issue requires discovery, and must be left for summary judgment. But plaintiff has not raised a UCC claim that is plausible on its face. Dismissal of this claim is appropriate.

Finally, plaintiff's intentional infliction of emotional distress is meritless. The standard for such claims is exceptionally high: "To support a claim for IIED, 'the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Pendolino v. BAC Home Loans Servicing, LP*, No. 10 C 5916, 2011 WL 3022265, at *5 (N.D. Ill. July 22, 2011) (Pallmeyer, J.) (quoting *Hukic v. Aurora Loan Services*, 588 F.3d 420, 438 (7th Cir. 2009)) (internal quotation marks omitted). The conduct

plaintiff attributes to CIT--enforcement of, and refusal to modify, the terms of plaintiff's debt, coupled with unreturned phone calls--does not remotely approach this standard.

IV.

For the foregoing reasons, plaintiff's complaint against CIT is dismissed in its entirety.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 1, 2011